UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                         ) | Case No. 23-cr-10245-IT |
| ) | |
| ERIC LABARGE            ) | |
| ) | |
| Defendant              ) | |
| ) | |

### SENTENCING MEMORANDUM IN SUPPORT OF ERIC LABARGE

Defendant Eric LaBarge ("Defendant" or "Mr. LaBarge") respectfully submits this memorandum for the Court's consideration in connection with his sentencing on November 25, 2024.

### I. INTRODUCTION

Mr. LaBarge deeply regrets his criminal conduct that gave rise to his guilty plea in this case, and accepts full responsibility for his wrongdoing. He will take the opportunity of his allocution to sincerely apologize to the victims of his crimes, as well as to the Government and the community at large. Mr. LaBarge will arrange for the payment of restitution to the victims of his crimes as soon as he can.

Mr. LaBarge is fully aware that he has a history of criminal conduct that could reasonably lead the Court to conclude he is incorrigible and unwilling to do the work necessary to lead a good and productive law-abiding life. We endeavor to present in this memorandum, and the attached character letters and Exhibits, a fuller picture of the Defendant that demonstrates powerfully the Defendant not only has the capacity to do good but, when he has succeeded in maintaining sobriety, he has an impressive record of accomplishment in utilizing his talents to help others in need and live an exemplary life. Mr. LaBarge has played a pivotal role in helping

1

many individuals achieve sobriety, and has devoted a substantial part of his life to serving the needs of his family and his community.

Mr. LaBarge is committed to taking advantage of the time he is incarcerated to continue to try to improve himself and to overcome the demons of drug abuse, mental illness and an extraordinarily difficult childhood and early adult life. Mr. LaBarge is committed to doing all that he can so that, when he completes serving his sentence, he will live a sober, productive and law-abiding life.

We respectfully submit that a sentence of 37 months, which is the low end of the guideline range, is appropriate.

## BACKGROUND

**A.    Childhood**

Mr. LaBarge was born on July 31, 1977 in Plattsburgh, New York. PSR, ¶ 59. He lived in New York until age nine, when he moved with his parents and siblings to New Hampshire. *Id.* Mr. LaBarge had a profoundly challenging childhood. His father was an alcoholic who was rarely home. His mother was a drug addict who suffered from mental illness and experienced numerous mental breakdowns.[1]

As a child, Mr. LaBarge ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The Defendant's parents allowed him to abuse alcohol when he was a young boy and he began to abuse drugs before he became a teenager, as is discussed further below. Mr. LaBarge's childhood was devoid of healthy role models.

---

[1] Mr. LaBarge's mother came from extremely challenging circumstances. Mr. LaBarge's mother was raped as a child, her father died when she was very young, and her mother was an alcoholic, which required her to raise six of her eleven siblings.
[2] Both of Mr. LaBarge's siblings have suffered from drug and alcohol addiction in their adult lives.

2

The toxic environment in which the Defendant was raised predictably led to bad behavior as a child. When he was 12 years old, the Defendant was ███████████████████ ███████████████████████████████████████████ *Id.* ██ ███████████████████████████████████ ███████████████████████████ *Id.* ██ ████████████ ████████████████ ███████████████████████████ ████████████████████████ █████████████████████████ ██████████████████████████ █████████████████████ ███████████████████████████ ███████████████████████ ████████████████████████ ██████████████████████████ ████████████████████ ██████████████████ ██ ██████████████ █████████████████ ████████████████████

████████████████████████████ ████████████████████████

████████████████████████████████████████████████

### C. History of Substance Abuse, Drug Addiction, Violent Crime, and Incarceration

As mentioned above, Mr. LaBarge's history with substance abuse began at a very young age. Mr. LaBarge was first introduced to alcohol at age five, and began drinking on his own between the ages of 12 and 13. PSR, ¶ 69. Mr. LaBarge first used marijuana at age 12, and was introduced to crack cocaine by a family member at age 13. PSR, ¶¶ 69-70. By age 15, Mr. LaBarge ultimately became addicted to crack cocaine and subsequently developed an addiction to powder cocaine. PSR, ¶ 70. Mr. LaBarge's addiction ultimately worsened, and by age 17 or 18 he began selling drugs and was in and out of "crack houses." PSR, ¶ 71. Mr. LaBarge used substances to escape his feelings of embarrassment, shame, and anger, ████████████ ████████████████████████████████ *Id.*

████████████████████████████████████████ denied him a fair chance to develop the life-skills, self-confidence and moral code necessary to become a successful young adult. His childhood experience of violence and substance abuse predictably led to mental illness and violent criminal conduct as an adult. Unsurprisingly, Mr. LaBarge harbored anger toward the world and embraced the violence he learned as a child, leading to chronic incarceration as a young adult. ████████████████████████████████████████ Mr. LaBarge adopted the understanding that the rules of survival required violence toward those whom he perceived as threats.

Mr. LaBarge first entered the New Hampshire state prison system in 1997, in connection with an assault charge at age 18. PSR, ¶¶ 71,72. While incarcerated, he completed an extensive

---

████████████████████████████████████
████████████████████████████████████████████████████████

4

substance use education program. PSR, ¶ 72. Mr. LaBarge was released in 1999, but relapsed into a cocaine addiction one year later. *Id.*

Mr. LaBarge was again incarcerated in 2006, during which time he found himself surrounded by heavy drug abuse, and developed a heroin addiction. PSR, ¶ 73. Mr. LaBarge has struggled with addiction for years. Although Mr. LaBarge was sober for a period of time following his incarceration, he relapsed again in 2014 after he was laid off from a job. PSR, ¶ 74.

### D.      Rehabilitation

Mr. LaBarge entered treatment programs in 2014, 2015, and 2017. Beginning in 2017, Mr. LaBarge spent three years at Rise Above, a sober living home in Nashua, New Hampshire. PSR, ¶¶ 74, 75. At this time, Mr. LaBarge completed parole and invested himself in his recovery. *Id.* Mr. LaBarge also became passionate about the treatment and recovery of others in his community. Through his own recovery, Mr. LaBarge eventually grew into a "staple member of [his] community" with "a genuine desire to make positive changes in both their own life and the lives of those around them." See Exhibit C, letter from Amanda Robichaud.

In 2018, Mr. LaBarge opened Starting Point, a business that initially operated a sober living program in Manchester, New Hampshire. Starting Point has ultimately grown to thirteen locations, with over 100 available beds.[4] As discussed more fully below and in the attached letters of support, Mr. LaBarge has helped countless individuals recover from drug addiction and become productive, law-abiding members of society through his work with Starting Point. Those who know him describe Mr. LaBarge as a "selfless man who has helped thousands in the

---

[4] As discussed in the letter filed with the Court on November 8, 2024, (Dkt. no. 195), Mr. LaBarge is also the founder and principal owner of SPLB Properties, LLC which owns a multi-family dwelling at 327-331 Central Avenue in Manchester, New Hampshire. Bank records relating to SPLB Properties, LLC and Starting Point will be provided to the Court in advance of the hearing.

recovery community" and as a person who has an "unwavering commitment to supporting others in their journey to recovery." See Exhibit C, letters submitted by Edward McGrath and Amanda Robichaud.

    E.    **Relapse**

In 2019, Mr. LaBarge continued ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ Mr. LaBarge relapsed during the Covid-19 pandemic. It was more difficult at the outset of the pandemic to attend Narcotics Anonymous meetings and connect with the community that supported his recovery.

At the time of the offence conduct in this case, Mr. LaBarge was self-medicating with THC in doses that impaired his judgment to a similar degree as occurred with other drugs in the past. Mr. LaBarge does not offer this information to seek to excuse or justify his criminal conduct in this case in any way. It is offered solely as contextual information about the untoward impact of drug abuse on Mr. LaBarge's behavior.

As discussed further below, Mr. LaBarge continues to work towards recovery from drug abuse.

    F.    **Good Character When Sober**

Mr. LaBarge's commitment to the treatment and recovery of others is illustrated by the many character letters attached hereto at Exhibit C. Mr. LaBarge is described as a "pillar of the recovery community" who has spent years helping others recover from drug addiction. *Id.*, letter from Keith Collins. One individual writes "Eric has also been a beacon of support for individuals striving to overcome personal challenges." *Id.*, letter from Craig Robichaud. Another writes, "his commitment to aiding those who are struggling speaks volumes about his character and integrity." *Id.*, letter submitted by Michelle Smith.

Jonathan Marciniak describes how Mr. LaBarge welcomed him to the sober living program at Starting Point on Thanksgiving Day in 2018, despite the fact that Mr. Marciniak was unable to pay for the program. As Mr. Marciniak writes:

> "Today, I am a son, a positive member of my family and community, a parent, engaged to be married, a homeowner, a landlord, a mentor, and a successful businessman helping others in their time of need. While I am proud of these titles, accolades, and accomplishments, it wasn't all my doing. None of this—especially the life I live today—was in the cards for me. Or at least, I couldn't see it. But Eric did. He pushed me, guided me, and saw more potential in me than I saw in myself. I didn't climb out of the trenches my life had become; I was pulled out. While I have done the legwork, a path was laid before me—all I had to do was walk it. Eric has done this for thousands he has encountered within his program and the recovery community."

*Id.,* letter from Jonathan Marciniak. Mr. Marciniak's description of the role Mr. LaBarge played in his recovery is not unique. A few excerpts from the attached letters follow:

- "Eric provided constant support, empathy, fellowship and suggestions towards this better way of living. Day after day, Eric humbled himself and met me where I was at in my current situation and provided the compassion and support necessary to lift me out of my old way of living." *Id.,* letter from Christopher Francis.

- "For the first time someone believed in me even when I was not capable of believing in myself… No matter what, no matter when, no matter where if he could be of service to those in need he was. lf it was not for Eric there would be alot more death and tragedy in this community." *Id.,* letter from David Balfour.

- "Eric has been a huge part of my journey since May 2020, Eric believed in me when many others didn't. Because of the person he is and his kindness and compassion for others I have achieved a life that felt nearly impossible." *Id.,* letter from Holli Bourque.

- "Through his unwavering dedication and compassion, Eric has played a pivotal role in saving my brother's life from the depths of addiction…. The selflessness and resilience Eric exhibited during this critical time were nothing short of heroic. His patience and faith in my brother's recovery were instrumental in helping him regain control of his life. Thanks to Eric I have my big brother back, celebrating 5 years of recovery." *Id.,* letter from Kaitlin Balfour.

- "I owe my sons life to Eric Labarge as he truly saved my sons life.
  Because of Eric Labarge, I now have my son back.. … I could never thank Eric enough for what he did for my son." *Id.,* letter from Rita Balfour.

- "During the most difficult time of my life, Eric showed up for me." *Id.,* letter from Chris Ledoux.

- "I have watched Eric mentor and give the shirt off his back to dozens of men who walked through Starting Points doors. Eric may have a checkered past but he is not the same man he was all those years ago. People [sic] do have the capacity for change which is something I hope we all believe in." *Id.,* letter from Evan Draper.

In addition to his work helping others recover from addiction, Mr. LaBarge has devoted his time and resources to helping the homeless by organizing fundraisers and providing food and clothes during the holiday season. *Id.,* letters from Ryan Gagne; David Balfour; Rita Balfour; Amanda Robichaud, and Christine Rivers.

Further, despite his tumultuous family upbringing, according to Shawn Cannizzaro, the owner of Hope 2 Freedom Recovery Homes, Mr. LaBarge has "built a family who depends on him." *Id.,* letter from Shawn Cannizzaro. Indeed, Mr. LaBarge served as a crucial support system for his nephews. As evidenced by the letter submitted by his nephews' mother, Christine Rivers, Mr. LaBarge has been a "constant" in his nephew Adam's life, and helped him navigate through his adolescence. *Id.,* letter from Christine Rivers. Ms. Rivers credits Mr. LaBarge with enabling Adam to receive his high school diploma and obtain gainful employment. *Id*. Mr. LaBarge's mother describes how Mr. Labarge would drive over 40 minutes each way to bring his disabled nephew, Evan, to his job at Market Basket. *Id.,* letter from Melody LaBarge. Mr. LaBarge supports his Mother, who describes Mr. LaBarge as "our rock." *Id.*

**G.     Good Behavior While at Plymouth County Correctional Facility**

Mr. LaBarge has been held at Plymouth County Correctional Facility since September 8, 2023. PSR, ¶ 4. During the period of his pretrial detention, Mr. LaBarge has a spotless record, has made great strides in managing his addiction, and has made an impact on other inmates who suffer from drug addiction. Mr. LaBarge enrolled in the voluntary drug program Pathways to Recovery, and as a "Peer Leader" started a men's group that meets each week with the help of

the program director, Laurel McLean. See Plymouth County Correctional Facility Pathways to Recovery Program letter from Carolyn M. Riley, MS ABD, Substance Use Disorder Program Manager, attached hereto at <u>Exhibit E</u>. Through the group, men are encouraged to seek recovery and use their time to work on themselves and their addictions by participating in a 12-step program and setting achievable goals for personal growth. Mr. LaBarge's continued commitment to the treatment and recovery of others, even while incarcerated, is detailed by the letters submitted by three of his fellow inmates, Matt Luise, Lawrence Sheedy, and Timothy Dinger-Galvin, attached hereto at <u>Exhibit F</u>.

## SENTENCING GUIDELINES

### A.  Appropriate Sentence – The Lowest End of the Guideline Range

As set forth in the plea agreement, the parties agree with Probation's calculation of the Sentencing Guidelines range at a level 19. PSR, ¶ 90. Mr. Labarge has a criminal history of category of III. *Id.* Accordingly, Mr. LaBarge's Guidelines Range is 37 months to 46 months. *Id.*

## ANALYSIS

### A.  Sentencing Factors Under 18 U.S.C. § 3553(a)

In determining the appropriate sentence, the court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). The Court must also consider the purposes of sentencing and ensure that any sentence imposed (A) reflects the seriousness of the offense, promotes respect for law, and provides just punishment; (B) affords adequate deterrence; (C) protects the public from future crimes of the defendant; and (D) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). The most relevant factors are discussed below. Here, we respectfully

submit that a sentence at the low end of the guideline range is consistent with the goals of 18 U.S.C. § 3553(a).

### 1. Section 3553(a)(1): The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant

The accompanying character letters establish that Mr. LaBarge, when sober, is a compassionate man who has a genuine concern for others in recovery, as well as for his community, family, and friends. The Court is urged to consider Mr. LaBarge's criminal conduct in the context of a debilitating childhood and teenage environment, his struggles with addiction, mental health problems, and his positive, determined efforts to overcome his addiction and turn his life around.

Mr. LaBarge not only accepts full responsibility for his conduct, he deeply regrets his actions. Mr. LaBarge is prepared to inform the Court that he has experienced a great deal of remorse and shame as a result of his role in this offense.

### 2. Section 3553(a)(2): Punishment, Deterrence and Rehabilitation

Section 3553(a)(2) requires the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in that section -- punishment, specific deterrence, general deterrence and rehabilitation. Mr. LaBarge respectfully submits that a sentence at the lower end of the applicable guidelines range would adequately serve these goals.

#### a. Just Punishment

Mr. LaBarge does not contest the seriousness of his offenses. It is respectfully submitted that a thirty-seven month sentence is appropriate punishment for the offenses at issue, particularly given the Defendants personal commitment to live a sober, law-abiding life. Mr. LaBarge lives each day under the weight of the guilt and shame caused by his actions.

b.	General Deterrence

Section 3553(a)(2)(B) requires the Court to consider the need to afford adequate general deterrence of criminal conduct. Mr. LaBarge respectfully submits that a prison sentence longer than the low end of the guidelines range is not necessary to accomplish the goal of general deterrence.  Mr. LaBarge's felony conviction, and resulting prison time, is sufficient to send a strong message that the crimes Mr. LaBarge pleaded guilty to are serious offenses with substantial consequences.

c.	Specific Deterrence

Section 3553(a)(2)(C) also requires the Court to consider the need to "protect the public from further crimes of the defendant."  Mr. LaBarge's record, including during his time served in Plymouth, show that he is unlikely to commit another crime in the future.  Mr. LaBarge lives under the weight of knowing has let down those who he supports in his recovery community, as well as his family and his friends.

d.	Rehabilitation

A longer prison sentence is not necessary to rehabilitate Mr. LaBarge.  Mr. LaBarge has accepted full responsibility for his actions.  He is ready to serve out his sentence and live the remainder of his life as an upstanding and productive member of society.  In light of Mr. LaBarge's commitment to his recovery community, as well as his commitment to his family and his friends, and his genuine remorse for his actions, a longer prison sentence is not necessary or appropriate.

**3.	Section 3553(a)(7): The Need to Provide Restitution to Any Victims**

Mr. LaBarge is committed to pay restitution of up to $50,000, as set forth in the plea agreement. PSR, ¶ 3. Mr. LaBarge will arrange for the payment of restitution as soon as he can.

## CONCLUSION

Mr. LaBarge is ready to serve out his sentence, so he can return to his community, who has pledged to support him upon his return. As described by Danette Labreque, "the community he has created is extremely eager to return the favor of support he has always provided. I'm certain that given the chance, he will emerge from this situation with strong determination to continue to add value to the lives of all those he comes into contact with." See Exhibit C, letter from Danette Labrecque.

Mackenzie Seely, Mr. LaBarge's friend and former co-worker writes, "I look forward to welcoming Eric back to the recovery community, those who come after us learn from our mistakes and I think that his story of losing his way and coming back with humility will help so many others someday. They will see what it looks like to fall down and get back up because Eric is willing to live and recover out loud." Id., letter from Mackenzie Seely.

Mr. LaBarge knows that he deserves to be punished, but respectfully submits that, in light of the above factors, a sentence at the low end of the applicable guideline range is consistent with the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

ERIC LABARGE

By his attorney,

/s/ *Michael J. Connolly*
Michael J. Connolly (BBO#638611)
Hinckley, Allen & Snyder, LLP
28 State Street
Boston, MA 02109
Phone number: (617) 378-4118
mconnolly@hinckleyallen.com

Dated: November 18, 2024

**Certificate of Service**

    I, Michael J. Connolly, hereby certify that on November 18, 2024 the foregoing document was filed through the Court's CM/ECF system, which will send notice electronically to all participants registered to receive electronic notice in the case.

                                            /s/ *Michael J. Connolly*
                                            Michael J. Connolly